INNOVA/PURE WATER, INC.,
Plaintiff–Appellant,

v.

SAFARI WATER FILTRATION SYS-
TEMS, INC. (doing business as Safari
Outdoor Products), Defendant–Appel-
lee.

No. 04–1097.

United States Court of Appeals,
Federal Circuit.

DECIDED: Aug. 11, 2004.

Robert A. Vanderhye, Nixon & Vanderhye P.C., of Arlington, VA, argued for plaintiff-appellant.

Catherine E. Stetson, Hogan & Hartson, LLP, of Washington, DC, argued for defendant-appellee. On the brief were Raymond A. Kurz and Celine Jimenez Crowson.

Before CLEVENGER, RADER, and LINN, Circuit Judges.

CLEVENGER, Circuit Judge.

Plaintiff–Appellant Innova/Pure Water, Inc. ("Innova") appeals the decision of the United States District Court for the Middle District of Florida granting summary judgment of noninfringement in favor of Defendant–Appellee Safari Water Filtration Systems, Inc. ("Safari") and denying Innova's attempt to amend its complaint to add a later issued patent. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 289 F.Supp.2d 1347 (M.D.Fla. 2003). Because the district court erred in its interpretation of the term "operatively connected," we vacate the district court's summary judgment of noninfringement and remand for further proceedings. Because the district court did not abuse its discretion in refusing to allow Innova to amend its complaint to add a later issued patent, we affirm that decision.

I

Innova sued Safari for infringement of U.S. Patent No. 5,609,759 ("the '759 patent"). The '759 patent, entitled, "Bottle Filter Cap," is directed to a water filter assembly and a container incorporating the assembly. In general terms, the filter assembly described includes a tube of filtering material (alternatively, "filter tube"), a bottle cap, and a valve for dispensing water. In some of the depicted embodiments, the assembly is positioned at the mouth of a container which is a bottle, sealing the bottle and suspending the tube of filtering material in the bottle. More broadly, the filter assembly operates to place the tube of filtering material between the water in the bottle and the valve so that water is filtered before it exits the bottle. Various embodiments are depicted in Figures 1–12 of the '759 patent.

Safari's accused product is a water bottle with a tube of filtering material, a bottle cap, and a valve. In operation, the tube of filtering material is suspended in the mouth of the bottle by means of an annular flange that rests on the mouth of the bottle. The tube of filtering material is mechanically sealed in position when the bottle cap is screwed over the mouth of the bottle, thereby contacting the annular flange and fixing the tube of filtering material in position to filter water before it exits the bottle.

At the district court, Innova moved for summary judgment of infringement, asserting literal infringement, or, barring that, infringement under the doctrine of equivalents, of independent claims 1 and 15, and dependent claims 5, 11, and 17–20. Safari moved for summary judgment of noninfringement.

In part, the independent claims at issue in the '759 patent state:

1. A filter assembly for use with a bottle having a circular cross-section neck or open end to simultaneously cap the neck or open end and filter liquid poured

out of the bottle through the neck or open end, comprising:

a tube of filtering material ... a cap ... said cap having first and second substantially opposite surfaces ... a manual valve operatively associated with said cap, in fluid communication with said tube of filtering material and manually movable between a position defining means for allowing liquid flow through said tube and a position defining means not allowing liquid flow through said tube; and

said tube *operatively connected* to said cap second surface at said tube second open end....

'759 patent, col. 6, ll. 46–64 (emphasis added).

15. A container for dispensing filtered water, comprising:

a plastic bottle ... a plastic cap ... said cap having first and second substantially opposite surfaces ... a ... tube of or containing filtering material ... a manual valve operatively associated with said cap, in fluid communication with said tube of filtering material and manually movable between a position defining means for allowing liquid flow through said tube and a position defining means not allowing liquid flow through said tube; and

said tube *operatively connected* to said cap second surface, and said tube having an outside diameter less than said inside diameter of said neck, and positioned with respect to said-cap within said bottle so that said tube axis is substantially transverse to said second surface and so that flow of liquid through said tube is primarily radial with respect to said tube axis during filtering, and through said side wall.

*Id.,* col. 7, l. 55 to col. 8, l. 17 (emphasis added).

The district court construed the claim term "operatively connected" to require that the tube of filtering material be affixed to the cap, *i.e.,* "not merely adjoining or abutting, but affixing the tube to the cap by some tenacious means of physical engagement that results in a unitary structure." Concluding that the annular flange arrangement of Safari's accused product is such that the filter tube is "never affixed to the cap by some tenacious means of physical engagement as required by claims 1 and 15," the district court denied Innova's motion for summary judgment and granted Safari's motion for summary judgment of noninfringement.

On appeal, Innova argues that the district court erred when it interpreted the claims to require that the tube of filtering material be affixed to the cap "by some tenacious means of physical engagement that results in a unitary structure." Innova thus asserts that the district court's conclusions regarding literal infringement and infringement under the doctrine of equivalents cannot stand in light of the proper claim construction and proposes that we reverse, order summary judgment of infringement, and remand for trial on damages and intentional infringement. Safari insists that the district court properly understood the meaning of "operatively connected" and, particularly in light of the written description and prosecution history, asserts that the claims can only be interpreted as requiring the tenacious physical engagement of the tube of filtering material and the cap. Therefore, argues Safari, the district court did not err in granting summary judgment.

Innova's appeal also challenges the district court's refusal to allow Innova to amend its complaint to add claims of infringement of U.S. Patent No. 6,165,362 ("the '362 patent"). The '362 patent issued on December 26, 2000, from an ap-

plication that claimed priority to the application that issued as the asserted '759 patent. Innova's motion to amend was filed June 13, 2001, approximately six months after issuance, ten months after the close of discovery (August 1, 2000), and nine months after the filing of summary judgment motions (September 2000). According to the district court, allowing "[a]mendment at [that] stage of the litigation, following Innova's delay, would unduly prejudice Safari." Innova now argues that the district court abused its discretion by denying the motion to amend because there was no delay on Innova's part, and no unfair prejudice to Safari would result from allowing the motion.

## II

■■■ This is an appeal from a final decision of a district court and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). We review summary judgment de novo. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed.Cir.1994). It is well established that determining infringement is a two-step process. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). First, the meaning and scope of the relevant claims must be ascertained. *Id.* Second, the properly construed claims must be compared to the accused device. *Id.* Claim construction, or interpretation, is a question of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454–56 (Fed.Cir.1998) (en banc). When exercising the power to review claim construction, this court determines the meaning and scope of the relevant claim language and decides whether the district court's determination of the meaning and scope of the relevant claim language is coterminous with that con-

struction. Where it is not, the district court has erred in its construction of the claims.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is improper where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." 477 U.S. at 248, 106 S.Ct. 2505. Thus, after determining the proper meaning and scope of the relevant claim language, we decide without deference if the district court was correct in its judgment that no reasonable jury could find, either literally or by application of the doctrine of equivalents, each and every limitation recited in the properly construed claims in the accused device. *Middleton, Inc. v. 3M*, 311 F.3d 1384, 1387 (Fed.Cir.2002); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed.Cir.2001); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir.1998).

## III

■■■ It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude. *Aro Mfg., Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) ("[T]he claims made in the patent are the sole measure of the grant."); *Altoona Publix Theatres v. Am. Tri–Ergon Corp.*, 294 U.S. 477, 487, 55 S.Ct. 455, 79 L.Ed. 1005 (1935) ("Under the statute it is the claims of the patent which define the invention."); *Smith v. Snow*, 294 U.S. 1, 11, 55 S.Ct.

279, 79 L.Ed. 721 (1935) ("[T]he claims of the patent, not its specifications, measure the invention."); *Cont'l Paper Bag Co. v. E. Paper Bag Co.*, 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122 (1908) ("In making his claim the inventor is at liberty to choose his own form of expression, and while the courts may construe the same in view of the specifications and the state of the art, they may not add to or detract from the claim." (citation omitted)); *White v. Dunbar*, 119 U.S. 47, 52, 7 S.Ct. 72, 30 L.Ed. 303 (1886) ("The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public ... to construe it in a manner different from the plain import of its terms."); *Merrill v. Yeomans*, 94 U.S. 568, 570, 24 L.Ed. 235 (1876) ("[The statutorily required] distinct and formal claim is, therefore, of primary importance, in the effort to ascertain precisely what it is that is patented to the appellant in this case."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed.Cir.1985) (en banc) ("It is the *claims* that measure the invention."). Attending this principle, a claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to "particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed.Cir. 2001) (quoting 35 U.S.C. § 112 ¶ 2); *see also Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989–90 (Fed. Cir.1999).

■ A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention. *See, e.g., SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1313 (Fed.Cir.2004); *Resqnet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1378 (Fed.Cir.2003); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed.Cir.2001); *Johnson Worldwide*, 175 F.3d at 989; *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed.Cir.1998); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1577 (Fed.Cir.1993). The inquiry into the meaning that claim terms would have to a person of skill in the art at the time of the invention is an objective one. This being the case, a court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art. *See Markman*, 52 F.3d at 979–80; *accord Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1305–15 (Fed.Cir.1999); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed.Cir.1996).

■ The written description provides a context for the claims, and is appropriately resorted to "for the purpose of better understanding the meaning of a claim," *White*, 119 U.S. at 51, 7 S.Ct. 72, and for "showing the connection in which a device is used," *McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110, 116, 16 S.Ct. 240, 40 L.Ed. 358 (1895). The claims of a patent may incorporate parts of the written description by reference, thus "limit[ing] the patent to the form described." *Smith*, 294 U.S. at 11, 55 S.Ct. 279. A patent applicant thus has the flexibility to imbue new or old terms with a different meaning than they would otherwise have to a person of ordinary skill in the art. *See Autogiro Co. of Am. v. United States*, 181 Ct.Cl. 55, 384 F.2d 391, 397 (Ct.Cl.

1967) ("[P]atent law allows the inventor to be his own lexicographer."). All that is required is that the patent applicant set out the different meaning in the specification in a manner sufficient to give one of ordinary skill in the art notice of the change from ordinary meaning. *In re Paulsen,* 30 F.3d 1475, 1480 (Fed.Cir. 1994); *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387–88 (Fed.Cir. 1992). Because the inquiry into the meaning of claim terms is an objective one, a patentee who notifies the public that claim terms are to be limited beyond their ordinary meaning to one of skill in the art will be bound by that notification, even where it may have been unintended. *See, e.g., Liebel–Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 905–09 (Fed.Cir.2004); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1344 (Fed.Cir. 2001) (stating, in the written description, "[the] structure ... is the basic ... structure for all embodiments"); *Watts v. XL Sys., Inc.,* 232 F.3d 877, 883 (Fed.Cir.2000) (stating, in the written description, "[t]he present invention utilizes [the] feature").

The longstanding difficulty is the contrasting nature of the axioms that (a) a claim must be read in view of the specification and (b) a court may not read a limitation into a claim from the specification. *See Liebel–Flarsheim,* 358 F.3d at 904–05 (acknowledging the "fine line" and "inherent tension" attending the question presented by these axioms). For, as Justice Bradley famously stated:

> Some persons seem to suppose that a claim in a patent is like a nose of wax which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express. The context may, undoubtedly, be resorted to, and often is resorted to, for the purpose of better understanding the meaning of the claim; but not for the purpose of changing it, and making it different from what it is. The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms. This has been so often expressed in the opinions of this court that it is unnecessary to pursue the subject further.

*White,* 119 U.S. at 51–52, 7 S.Ct. 72; *see also Cont'l Paper Bag,* 210 U.S. at 419, 28 S.Ct. 748; *McCarty,* 160 U.S. at 116, 16 S.Ct. 240 ("[W]e know of no principle of law which would authorize us to read into a claim an element which is not present...."). Accordingly, particular embodiments appearing in the written description will not be used to limit claim language that has broader effect. *See Electro Sci. Indus., Inc. v. Dynamic Details, Inc.,* 307 F.3d 1343, 1349 (Fed.Cir. 2002); *Laitram Corp. v. NEC Corp.,* 163 F.3d 1342, 1347–48 (Fed.Cir.1998). And, even where a patent describes only a single embodiment, claims will not be "read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel–Flarsheim,* 358 F.3d at 906 (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1327 (Fed.Cir.2002)).

## IV

Innova's appeal with respect to the asserted claims of the '759 patent turns on the correct interpretation of the disputed claim term, "operatively connected." According to the district court, the ordinary meaning of "said tube operatively connected to said cap" requires that the two com-

ponents be "affix[ed] ... by some tenacious means of physical engagement that results in a unitary structure." Innova challenges this construction as improperly importing a tenacious physical engagement limitation into claim language that does not require any such thing. Safari concurs with the district court. The district court erred. The asserted claims do not require that the filter tube and cap be affixed to one another in a manner that results in the two components forming a unitary structure. Neither party asserts that the term "operatively connected" is a technical term having a special meaning in the art of water filtration. Rather, it is a general descriptive term frequently used in patent drafting to reflect a functional relationship between claimed components. Generally speaking, and as used in the '759 patent, it means the claimed components must be connected in a way to perform a designated function. In the absence of modifiers, general descriptive terms are typically construed as having their full meaning. See *Johnson Worldwide*, 175 F.3d at 992 (refusing to import a modifier for the term "coupled"); *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 865–66 (Fed.Cir.1997) (refusing to import a modifier for the term "reciprocating"). Thus, the district court was correct to look to the ordinary meaning of the terms "operatively" and "connected" and we discern no error in the district court's initial understanding that "the ordinary and customary meaning of 'operatively connected' requires the ... linking together of the tube and the cap to produce the intended or proper effect." But the district court erred when it proceeded beyond this plain meaning based on the "[e]xamples of means for connecting the tube to the cap disclosed in the '759 patent," all of which reflect a "physical engagement [between the tube and the cap] that results in a unitary structure." See *Teleflex*, 299 F.3d at 1328.

The district court also erred in interpreting the "intended or proper effect," *i.e.*, the designated function, to be the operation of "creat[ing] a filter assembly" with a unitary structure. Instead, as Innova contends, the proper designated function is the operation of the assembly, *i.e.*, filtering. Thus, "said tube [is] operatively connected to said cap" when the tube and cap are arranged in a manner that affects filtering. Safari contends that the district court was correct because for a connection to be operative for filtering, the structure performing the filtering must also be associated with a bottle, a limitation not found in claim 1 of the '759 patent. We disagree because the claims, and also the written description, reflect that an intended purpose for the claimed invention is for use with a bottle to filter water.

 Focusing first on the claims, we observe that the preamble of claim 1 recites: "A filter assembly for use with a bottle ... to simultaneously cap the neck or open end *and* filter liquid poured out of the bottle...." '759 patent, col. 6, ll. 45–49 (emphasis added). Language in a preamble limits a claim where it breathes life and meaning into the claim, see *In re Paulsen*, 30 F.3d at 1479, but not where it merely recites a purpose or intended use of the invention. *Id.* In this case, we need not decide whether the preamble adds a limitation to the claim because we hold that it recites a purpose or intended use of the claimed filter assembly as, inter alia, filter[ing] liquid poured out of the bottle. Other parts of claim 1 also show that the intended function of the claimed structure is filtering. Beyond stating that the tube is operatively connected to said cap, the claim also states that a valve is operatively associated with said cap, in fluid communication with said tube of filtering material. '759 patent, col. 6, ll. 58–59. The claim further explains that the valve controls the

flow of liquid through the tube of filtering material as the valve is manually movable between a position defining means for allowing liquid flow through said tube and a position defining means not allowing liquid flow through said tube. *Id.*, ll. 59–63. In sum, we think the operation defined by controlling the flow of liquid through the tube of filtering material is the operation of filtering.

As Safari acknowledges, Innova's argument that operatively refers to the function of filtering, has even more traction when applied to claim 15. Claim 15 is directed to [a] container for dispensing filtered water. '759 patent, col. 7, l. 55. It expressly claims a bottle as an element of the disclosed structure. *Id.*, ll. 56–58. It contains the in fluid communication limitation present in claim 1. *Id.*, col. 8, ll. 4–9. And, it contains additional language explaining the position of the tube of filtering material relative to the cap, the bottle, and the liquid flow:

> said tube operatively connected to said cap second surface, and said tube having an outside diameter less than said inside diameter of said neck, and positioned with respect to said-cap within said bottle so that said tube axis is substantially transverse to said second surface and so that flow of liquid through said tube is primarily radial with respect to said tube axis during filtering, and through said side wall.

*Id.*, ll. 10–17.

▮ Not only do both claims evidence that an intended function or operation of the claimed structure is filtering, such a function is also evident from the written description, *e.g.*, "[t]here is a significant demand for filtered drinking water …," '759 patent, col. 1, l. 6; "a filter assembly is provided … capable of effectively treating drinking water to remove chlorine and organic taste contaminants therefrom and

reduces a variety of chemical contaminants." *Id.*, ll. 25–29. Unless otherwise compelled, when different claims of a patent use the same language, we give that language the same effect in each claim. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed.Cir.2003). Here, we are not otherwise compelled. "Operatively connected" carries the same meaning in both claims.

▮ Furthermore, we observe that Safari's interpretation largely reads the term "operatively" out of the phrase "operatively connected." While not an absolute rule, all claim terms are presumed to have meaning in a claim. *Cf. Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1373 (Fed. Cir.2002). If, as Safari proposes, the claim refers in the abstract to the creation of a filter assembly structure, without any grounding to an intended use, the term "operatively" is unnecessary and superfluous as the patentee could have as easily used the term "connected" alone.

▮ Safari also proposes that the district court's construction can be supported by the patentee's use, in claim 15, of "operatively connected" and "operatively associated." The argument is that the patentee's use of the term "connected" to claim the tube-cap relationship stands in such stark contrast to the patentee's choice of "associated" to define the valve-cap relationship, that the patentee could only have intended that "connected" and "associated" were of different scope. Despite Innova's assertion to the contrary, when an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms. *See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed.Cir. 2004); *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed.

Cir.1996). For this argument to be dispositive of a particular claim construction, however, one must accept that "connected" and "associated" can be discerned along the lines Safari urges. In particular, one must accept the argument that although both terms can, by their plain meaning, include nonphysical attachment, "associated" was meant to define both nonphysical and physical attachment while "connected" was used in a narrower sense, incorporating only a physical attachment definition. Safari urges that we can make the distinction based on the disclosed embodiments. We disagree. While an inference that "connected" and "associated" have different meanings in this case may be particularly appropriate because the words here define the relationship between two objects, the terms "connected" and "associated" are very similar in meaning. The context does not make clear to us that Innova's use of both terms means that "connected" should be limited to tenacious physical engagement. Moreover, we observe that in at least one circumstance, Innova described the filter as "associated" with the cap. '759 patent, col. 1, ll. 41–43 ("a cap with which the filter is associated being adaptable to fit any type of closure mechanism on a conventional plastic bottle"). Finally, as we discuss in further detail, *infra*, we decline to limit the claims based only on the embodiments in the written description. Thus, the context does not show that "connected" and "associated" should be differentiated into the definitions proposed by Safari, and we must conclude that this is simply a case where the patentee used different words to express similar concepts, even though it may be confusing drafting practice. *Bancorp Servs.*, 359 F.3d at 1373.

In sum, subject to any clear and unmistakable disavowal of claim scope, the term "operatively connected" takes the full breadth of its ordinary meaning, *i.e.*, "said

tube [is] operatively connected to said cap" when the tube and cap are arranged in a manner capable of performing the function of filtering.

## A

Safari contends that in the written description and prosecution history the patentee clearly and unmistakably disavowed the full breadth of meaning of "operatively connected" and put the public on clear notice that the claims should be limited to cover only embodiments where the filter tube and cap are tenaciously physically engaged. Concerning the written description, Safari relies most heavily on the argument that at "every point" in the written description where "operatively connected" is discussed, it is discussed as having the "common denominator" of tenacious physical engagement. However, at argument, Safari's counsel had difficulty pointing to a statement in the written description that clearly and unmistakably shows the applicant's intent to limit the scope of the claims to tenacious physical engagement. Undaunted, Safari contends that even if we disagree that the written description contains specific language clearly showing disavowal, the applicant's clear and unmistakable disavowal of all embodiments in which the tube is not tenaciously engaged to the cap is evident from reading the written description as a whole. According to Safari, when one reads the written description from beginning to end, there is no disclosure of a tube and cap arrangement where the tube and cap are not, in the words of the district court, "affix[ed] ... by some tenacious means of physical engagement that results in a unitary structure." Safari also relies heavily on the observation that not a single drawing in the written description depicts an arrangement of tube and cap in other than tena-

cious engagement.[1] Thus, contends Safari, because courts do not construe claims beyond what is disclosed in the written description, the written description demands a finding by this court that "operatively connected" is limited to tenacious physical engagement. Making the same argument, although in different terms, Safari argues that, acting as his own lexicographer, the patentee in this case defined "operatively connected" as requiring tenacious physical engagement. Again, we disagree.

### 1

 The abstract of the written description contains the statement: "The tube is operatively connected to the cap second surface at the tube second open end by sonic welding, a mechanical connection, or adhesively." '759 patent, Abstract. While a statement in the Abstract may operate as a clear expression of manifest exclusion, for several reasons, this statement does not. Nor does this statement weigh heavily when considering whether the applicant has acted as his own lexicographer. To begin, this statement is in the Abstract of the patent. This section of a patent speaks generally to the invention and, much like the syllabus of an opinion, sets forth general information about the document's content, which is described in more detail in the remainder of the document. Second, in our view, this statement reflects the applicant's attempt to disclose the broad array of means by which the tube can be connected to the cap. This observation begs a third point. Safari, and it seems the district court, appear to believe the term "mechanical connection" requires tenacious physical engagement, and accordingly, cannot include within its scope Safari's product, which suspends the tube of filtering material in the bottle mouth by means of an annular flange sealed in place by a cap screwed over the mouth of the bottle. We simply do not agree. By a twist of the wrist, the bottle cap is screwed tight, thus mechanically locking the filter to the lip of the bottle.

The connection of the filter and cap is addressed in other portions of the written description. The paragraph beginning: "According to the present invention ...," '759 patent, col. 1, l. 23, describes the "filter assemblies and containers according to the present invention," *id.,* ll. 38–39, as having "the actual filter element being connected to the other components either adhesively, mechanically, or by welding (e.g. sonic welding), a cap with which the filter is associated being adaptable to fit any type of closure mechanism on a conventional plastic bottle...." *Id.,* ll. 38–44. Although at first glance one might think that the use of the word "associated" creates a requirement that the filter and cap be affixed in tenacious physical engagement, it does not. Without doubt, a structural element "associated" with a separate structural element can be tenaciously physically engaged. However, there is no requirement that this be so because the word "associated" merely reflects that the recited elements be joined in some kind of relationship. Thus, in contrast to, for example, *SciMed,* this language is less direct, clear, and defining than the phrase "[the] structure ... is the basic ... structure for all embodiments." 242 F.3d at 1344.

 The kernel of Safari's position is that the embodiment, or embodiments, depicted in the figures and written description show "not merely adjoining or abutting, but affixing the tube to the cap by some tenacious means of physical engagement that results in a unitary structure." Perhaps the most straightforward answer

---

1. Innova unsuccessfully disputes this aspect of the disclosure.

**1122**

to Safari's argument is that the law does not require the court, where an applicant describes only a single embodiment, to construe the claims as limited to that one embodiment. *See, e.g., Liebel–Flarsheim,* 358 F.3d at 906–09. Indeed, such a construction is not encouraged or presumed. *Id.* From another level of abstraction, of course, the patentee's disclosures in this case could be viewed as the disclosure of many embodiments. So viewed, the patentee presented several examples of the types of connections between the filter tube and cap useful for the invention and in all examples depicted the connection as a tenacious physical engagement. Here, this is a difference without substance. As noted earlier, the specification as a whole reflects the patentee's efforts to describe and claim all operative connections. Also, the written description discloses that the operative connection can be "mechanical," a feature we conclude is present in the arrangement of the filter tube and cap in Safari's product as presented to this court. Finally, and most importantly, Safari's argument flies into the sun that is the plain import of the claim language "operatively connected." We thus decline to apply Safari's reasoning.

2

According to Safari, the prosecution history is "consistent with" their proposed definition of "operatively connected," and, based on "representations made to secure the '759 patent," "Innova is estopped" from arguing that any other construction is possible. We conclude that the prosecution history does not preclude the construction advanced by Innova and adopted in this opinion.

2. At this stage in the prosecution, the claim that would issue as claim 15 in the '759 patent was claim 19. Although it contained,

Safari first refers to a section 103 rejection made by the examiner to pending claims 1–18. In that rejection, the examiner stated:

Regarding the various means of attaching the tube to the cap, such as welding, adhesion, etc., these features are considered to be conventional and would have been *obvious in the device of* [the prior art] to provide alternative conventional attachment means.

We note here, that claim 13 ultimately issued as claim 1. At the time of the rejection however, claim 13 was merely a claim depending from then claim 1 and recited a type of filtering material. Claim 1, from this point in the prosecution history later issued as claim 22.[2] Even so, this claim contained the relevant "said tube operatively connected to said cap" language, and the cited portion of the examiner's rejection is properly read as referring to this connection.

■ Responding, the patentee made a number of arguments concerning pending claim 1, of which the district court and appellee make no issue. Then, addressing dependent claims 2–18, the applicant made the statement:

In fact, it is believed that the dependent claims even more clearly and unequivocally distinguish from the art. For example, no place in either [prior art reference] are the mutually exclusive adhesive connection of claim 2, welding, (e.g., ultrasonic welding) of claim 3, or mechanical connection of claim 5 pointed out in the previous action or seen in the references, let alone the particular O ring connection recited in claim 6, or the particular mechanical connection flanges of claim 17.

"said tube operatively connected to said cap," the examiner did not include it in this rejection.

Although asserting that the "significance placed on this feature by Innova estops Innova from disclaiming that the filter tube is affixed to the cap," Safari fails to explain how this statement demands such a conclusion. After careful consideration of the content of the statement, we conclude that it does not clearly and unambiguously disavow mechanical connections where the filter tube is not tenaciously physically engaged to the cap. *See Omega Eng'g,* 334 F.3d at 1323–24. In particular, we note that dependent claims are typically narrower and, by so being, are more likely to clearly distinguish the prior art. Generally speaking, this is, in part, their function. In addition, it is of little moment that the dependent claims mentioned in the response refer to connections that result in a unitary structure. This is so for at least two reasons. First, the language of the response refers to claims that specifically claim embodiments in which the filter tube and cap are tenaciously physically engaged. By the patentee's selection of language, which the examiner allowed, claims 1 and 15 are not facially limited to such embodiments. Second, to accommodate Safari's argument now, we would have to conclude that it would be appropriate to limit an independent claim by the additional limitations of claims depending from that claim. Although, in some cases this *might* be possible, the doctrine of claim differentiation "normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 971–72 (Fed.Cir.1999) (stating that this interpretative tool stems from "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope"). In sum, the argument that dependent claims, which require tenacious engagement, "more

clearly ... distinguish from the art" does not mean that claims from which those claims depend are equally limited.

Next, Safari points to a dialog between the examiner and patentee where the examiner rejected then-pending claim 17 because "[i]t would have been obvious to utilize the flange/projections of [the prior art] ... to provide an alternative but equivalent connection means." The claim addressed by this rejection literally claims a connection between the tube and cap that uses a flange extending from the filter tube to engage the cap. The applicant responded to the rejection thus:

> For example, [the prior art] shows an axial filter that is sealed at the top and employs a mixture of anion and cation resins, using the flange to suspend the filter of ion exchange resins which operate in axial flow mode.... This is contrary to [other prior art] and the claimed invention.

Safari contends that this statement disavows the use of a flange to suspend the filter tube. Innova contends that this statement was directed to the distinction of radial as opposed to axial filtering. Careful inspection of the prosecution history indicates that Innova has the better argument. Beginning with the statement itself, we cannot distinguish whether it is referring to the filter or the flange. Examining the following Office Action, we observe that the examiner understood Innova's statement to be referring to the filter: "The applicants also argue that [the prior art] discloses an axial filter; however [the prior art] was cited solely for the feature of a conventional flange on the rim of the tubular filter." Following this discourse, a telephone interview occurred, after which the examiner allowed the claim, unamended, and still directed to the use of

a flange to make the tube-cap connection.[3] This series of communications does not reflect the clear and unambiguous disavowal of caps and filters connected by mechanical means short of tenacious physical engagement. Rather, it reflects first, the examiner and applicant talking past one another. It reflects second, that the applicant was able to convince the examiner, by off the record communications, to retreat from her position. However unfortunate it is that the public and this court are prevented from knowing what arguments caused the examiner to abandon her position, the record finally reflects the examiner's acquiescence to the claim language chosen by the applicant. This is not clear evidence of the patentee's disavowal of claim scope.

■ Safari also points to a rejection entered by the examiner, where the examiner describes a piece of asserted prior art as "considered to disclose a tubular filter attached to a cap as instantly claimed." It is well settled, however, that it is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims.

## V

■ Innova argues the district court erred by denying the motion to amend the complaint to add the '362 patent because there was no delay on Innova's part, and no unfair prejudice to Safari would result from granting the motion. At the outset, this is a nonpatent matter where we apply the law of the circuit in which the district court sits. See Cultor Corp. v. A.E. Staley Mfg. Co., 224 F.3d 1328, 1332–33 (Fed.Cir.2000). This appeal is from the middle district of Florida, within the eleventh circuit, which reviews the refusal of leave to amend for abuse of

discretion. Lowe's Home Ctrs., Inc. v. Olin Corp., 313 F.3d 1307, 1314–15 (11th Cir.2002). On this deferential standard of review, we detect no abuse of discretion.

In the eleventh circuit, the court freely grants leave to amend when justice so requires. Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1217–18 (11th Cir.2004). However, a motion to amend may be denied on "numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment." Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't. of Educ., 342 F.3d 1281, 1287 (11th Cir.2003) (citation and internal quotation marks omitted). In addition, "it is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments, and past the deadline for filing dispositive motions." Lowe's, 313 F.3d at 1315.

A number of these considerations are present in this case. In particular, Innova sought to amend the complaint approximately six months after the '362 patent issued, ten months after discovery closed, and nine months after the filing of summary judgment motions. Accordingly, the district court did not abuse its discretion when it denied Innova's motion to amend.

## VI

In conclusion, the correct claim construction does not limit claims 1 and 15 to only embodiments where "said tube [is] operatively connected to said cap" by mechanical means that result in tenacious physical engagement. Accordingly, the district court erred when it granted Safari's motion for summary judgment of no literal infringement based on the fact that in Safari's accused product the filter tube is "never affixed to the cap by some tena-

3. It issued as claim 14 of the '759 patent.

cious means of physical engagement as required by claims 1 and 15." For the same reasons, the district court erred in granting summary judgment of no infringement under the doctrine of equivalents based on its factual conclusion that "merely adjoining or abutting ... is not the equivalent of affixing the tube to the cap." And, finally, as discussed, we disagree with the district court that the applicant, in the course of prosecution, surrendered the method employed in the Safari product of using a flange to position the filter element.

On the record before us, however, we cannot be certain that reversing and entering summary judgment in favor of Innova is the proper course of action. We leave that decision, in the first instance, to the district court. Thus, we vacate the district court's grant of summary judgment of noninfringement in favor of Safari and remand for further proceedings in light of the correct claim interpretation. Because we detect no abuse of discretion, we affirm the district court's denial of Innova's motion to amend the complaint to add the '362 patent.

### COSTS

No costs.

*VACATED–IN–PART, AFFIRMED–IN–PART, REMANDED.*