Wallach, Circuit Judge,
concurring-in-part and dissenting-in-part.
I agree with the majority that the U.S. District Court for the Eastern District of Texas (“District Court”) did not err either in determining that claims 11 and 13 of U.S. Patent No. 8,434,020 (“the ’020 patent”) and claims 8-9 of U.S. Patent No. 8,713,476 (“the ’476 patent”) (collectively, the “Asserted Claims”) (together, the “Patents-in-Suit”) are patent eligible or in construing the “reached directly” claim limitation for purposes of its infringement and anticipation analyses. See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc., No. 2:14-cv-911-JRG, 2016 WL 4440255, at *1 (E.D. Tex. Aug. 23, 2016) (ruling on anticipation and infringement); Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc., No. 2:14-cv-911-JRG-RSP, 2016 WL 1106438 (E.D. Tex. Mar. 20, 2016) (J.A. 9555-62) (ruling on eligibility). I disagree, however, with the majority’s ruling affirming the District Court’s construction of the “un-launched state” limitation. See ’476 patent col. 6 11. 2-3; ’020 patent col. 5 1. 43. I would find the term “un-launched state” to mean “not running,” as proposed by Appellant LG Electronics, Inc. (“LG”), and remand the case to the District Court for review of whether this construction alters its findings on infringement and anticipation.[1] I therefore respectfully dissent-in-part from today’s judgment. I review the legal standard for claim construction and then turn to my analysis.
I. Legal Standard
Claim construction focuses on the wording of the claims, “read in view of the specification, of which they are a part.” Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (internal quotation marks and citation omitted). Prosecution history may also be examined to supply additional context to support a claim term’s intended meaning. See Home Diagnostics, Inc. v. Lifescan, Inc., 381 F.3d 1352, 1356 (Fed. Cir. 2004). While courts may consider extrinsic evidence in claim construction, “such evidence is generally of less significance than the intrinsic record.” Wi-LAN, Inc. v. Apple Inc., 811 F.3d 455, 462 (Fed. Cir. 2016) (citation omitted). Extrinsic evidence may not be used “to contradict claim meaning that is unambiguous in light of the intrinsic evidence.” Phillips, 415 F.3d at 1324 (citation omitted). The District Court did not analyze extrinsic evidence in making its determination. See J.A. 10277-97. When the district court reviews only evidence intrinsic to the patent, that determination will amount solely to a determination of law that we review de novo. See Teva Pharm. USA, Inc. v. Sandoz, Inc., - U.S. -, 135 S.Ct. 831, 841, - L.Ed.2d - (2015).
II. The District Court Erred in Its Claim Construction of “Un-Launched State”
The District Court construed the term “un-launched state” during a pretrial con *1370 ference to mean “not displayed” and maintained that construction .in its post-trial denial of judgment as a matter of law. See Core Wireless, 2016 WL 4440255, at *4-5; J.A. 10297. LG argues that the term “un-launched state” should mean “not running.” Appellant’s Br. 30; see id. at 30-48. I agree with LG. Consistent with claim construction principles, I look first to the language of the claims, followed by the remainder of the specification’s language and prosecution history. See Phillips, 415 F.3d at 1315.
First, the claims state in part that: an application summary “displays” certain data offered in applications; each of the data is “selectable to launch the respective application and enable the selected data to be seen”; and the application summary is “displayed while the one or more applications are in an un-launched state.” ’476 patent col. 5 1. 60-col. 6 1. 3 (claim l).[2] “Display” is used differently and independently from “launch” in the claims, which indicates these terms have different meanings. In addition,'by separating “launch” and “enable the selected data to be seen,” the claims contemplate a difference between launching and displaying data. See Chi. Bd. Options Exch., Inc. v. Int’l Sec. Exch., LLC, 677 F.3d 1361, 1369 (Fed. Cir. 2012) (applying a “general presumption that different [claim] terms have different meanings”). Further, the claim language distinguishes between “launching] the respective application” itself, and “enabling] the selected data ... within” the application to be seen. ’476 patent col. 5 1. 66-col. 6 1. 1 (emphasis added). Such a distinction would be rendered meaningless, if launch were construed to mean “display.” See Merck & Co. v. Teva Pharm. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) (“A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.” (citation omitted)). Moreover, I do not understand what “displaying” the application itself would mean in this context, where the claim language more specifically directs the invention to enable only certain “data” previewed in the application summary to be seen. See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1119 (Fed. Cir. 2004) (“[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in meaning of those terms.”).
Second, the specification uses the terms “launch” and “display” distinctly. See ’476 patent col. 3 11. 10-11 (“Once the summary window is launched, core data/functionality is displayed.”). This could either mean the terms áre distinct, or, as the majority finds, that launch.is synonymous with display. See Maj. Op. at 1365-67. As stated previously, based on claim differentiation principles, I find it more likely that “launch” is a first step of independent meaning, and “display” is a step that comes second, after the “summary window” has been launched. Appellee Core Wireless. Licensing S.A.R.L. (“Core Wireless”) contends that the statement “a user can ... launch a.main view which shows various applications,” ’476 patent col. 3 11. 5-7, supports its argument that “launch” refers to granting “visual access,” because the language of the specification uses the term “view,” Appellee’s Br. 21. However, the term “main view” refers to and is synonymous with the summáry application window. See '476 patent col. 3 11. 5-7, 17-33; id. figs.1-3. Referring to this particular page using the term “view” does not confer additional meaning on the verb “launch.”

*1371 Additional language in the specification in support of LG’s construction states that previously, users would “locate,” “then start/open the required application,” “and then may need to ,.. cause the required stored data ... to be displayed.” Id. col. 1 ll. 51-55 (emphasis added). Again, the specification contemplates display and opening as two separate steps in the user’s process, which leads me to the conclusion that “display” and “open” are not synonymous, and that the drafters of the Patents-in-Suit knew how to use the term “display” when conveying visual access to an application’s contents.[3] I also note that the specification explicitly defines the term “idle screen” as “a display which is shown when the mobile telephone is switched on but not in use,” id. col. 2 ll. 10-12, which indicates the drafters of the Patents-in-Suit knew how to define a single term that contained two separate meanings (here, one related to display, and one related to operation), and believed such an explanation would be necessary for terms that on their face did not contain a dual meaning. For that reason, I am. skeptical of the majority’s understanding that the term “un-launched” “encompasses both applications that are not running at all and applications that are running, at least to some extent, in the background of the electronic device.”[4] Maj. Op. at 1365.
I also agree with LG’s contention that the specification teaches the invention was directed to a problem in line with its construction of the term “un-launched state,” or, at least, that the problems in the field are- inconclusive to weigh in favor of either party’s proposed construction. LG asserts that the invention is directed to saving “the user from navigating to the required application, opening it up, and then navigating within that application.” Appellant’s Br. 32 (quoting ’476 patent col. 2 11. 46-50). Again, construction hinges on our understanding of the term “open” in this phrase and whether it refers to running or displaying an application. No matter the construction of launch though, the claimed invention seeks to improve access to the large amount of information stored in small computing devices. See, e.g., ’476 patent col. 2 L. 66-col. 3 1. 6 (discussing invention’s “advantages in ease and speed of navigation, particularly on small screen devices”). It seems to me that the default state of the applications storing this information when a user navigates through the claimed summary application menu does not affect the utility of the claimed invention.
The majority identifies the stated focus of the inventions as to “allow the user to navigate quickly and efficiently to access data and activate a desired function” on small screens. Maj. Op. at 1365 (quoting ’020 patent col. 1 11. 26-29), Therefore, it finds the absence of an explicitly stated goal such as “memory drain,” a problem which appears to be of the majority’s own creation, to be instructive in its construction of the term “un-launched,” because the invention - “only concerns itself with maximizing the benefit of the ‘common functions and commonly accessed data’ ae- *1372 tually displayed to the user.” Id. at 1365 (quoting ’020 patent col. 4 11. 36-39). In our claim construction analysis, we look not to what is absent from the specification or what could have been written, but rather to what is included. See Merck & Co. v. Teva Pharm. USA, Inc., 347 F.3d 1367, 1371 (Fed. Cir. 2003) (“A fundamental rule of claim construction is that the terms in a patent documént are construed with the meaning with which they are presented in the patent' document. Thus claims must be construed so as to be consistent with the specification .... ” (emphasis added) (citations omitted)). Here, as mentioned above, the focus of the invention identified by the majority can support either party’s construction of the disputed term. The use of an application summary menu to congregate data from myriad applications on a small screen computing device benefits users in the manner stated, regardless of whether the applications are running in the background. Moreover, in other parts of the specification, the invention is directed towards “effectively enabling the user to understand th[e device’s] changing internal state” through offering on the application menu page a list of “common functions offered within an application and/or ... data stored in that application.” ’476 patent col. 2 11. 22-24, 34-36. Here again, enabling a user to better understand- options ■ offered by applications and-' data stored within them are goals that are successfully achieved with applications that are not running until selected from the main menu.
Third, the prosecution history further supports LG’s proffered construction. Even if Core Wireless did not disclaim its professed interpretation that “launch” means “display,”[5] I would nevertheless find LG’s interpretation of “tin-launched” comports more closely with the overall language of the Patents-in-Suit and prosecution history. See Phillips, 415 F.3d at 1316. Indeed, during prosecution, Core Wireless distinguished the Asserted Claims from those in the prior art because, unlike the prior art, its claims did not “only ever display[]” the summary application menu “within a running instance of the program, i.e., only when the program is' in a launched state.” J.A. 12764 (emphasis added). Thus, Core Wireless used the term “launch” to mean running, not merely displayed. See J.A. 12765 (stating, in another portion of Core Wireless’s amendment, that 1) the “underlying purpose” of the claimed invention is that it overcomes the prior art in which information about applications in the summary application menu “is not displayed until after the application is already running” and 2) the prior art “relate[s] to running applications and combining them does nothing to satisfy the requirement of the present claims that the application summary window is displayed without launching the application” (emphasis added)).
The majority adopts Core Wireless’s argument that construing “un-launched” to mean “not running” would exclude certain preferred embodiments in the specification, see Maj. Op. at 1366-67; see also Appellee’s Br. 28-29, contrary to our court’s instruction that a construction “that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct,” MBO Labs., Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1333 (Fed. Cir. 2007) (internal quotation marks and citation omitted). Specifically, Figure 3 illustrates an application window that indicates there is an ongoing chat not seen on the *1373 screen. See ’020 patent flg.3; ’476 patent fig.3. The majority states that “use of the word ‘ongoing’ (as opposed to a word like ‘received’) indicates that, in at least some embodiments of the invention, at least some subset of processes of the Messages application are already running.” Maj. Op. at 1366. Yet Core Wireless has not presented evidence, in the form of expert testimony or otherwise, to suggest that the display in the application menu of new messages or the use of the term ongoing in the summary menu would be understood by a person having ordinary skill in the art to indicate the underlying application is running. Core Wireless presents only attorney argument, not evidence. See Gemtron Corp. v. Saint-Gobain Corp., 572 F.3d 1371, 1380 (Fed. Cir. 2009) (“[U]n-swom attorney argument ... is not evidence and cannot re-but ... admitted evidence.” (citation omitted)); Appellee’s Br. 28-29. Moreover, I do not believe construing “unlaunched” to mean “not running” would be inconsistent with this preferred embodiment, since the requirements of claim 1 only state that “one or more applications” are in an un-launched state. ’476 patent col. 611. 2-3; see ’020 patent col. 511. 35, 43 (requiring “at least a first application” that is “in an un-launched state”). Therefore, even if “ongoing” were to imply a running application, the application menu display of messages from a non-running message application would still satisfy the requirements of claim 1 of the Patents-in-Suit.[6]

Accordingly, I would reverse the District Court’s claim construction of “un-launched state” and construe the term to mean “not running.” Given this claim construction, I would remand for further findings on infringement and anticipation. I respectfully dissent.

. Neither party argued that a different claim construction would affect our analysis of eligibility. See generally Appellant’s Br.; Appellee’s Br.

. Claim 1 of the '020 patent is substantively similar to the relevant portions of the '476 patent and the specifications are effectively identical, so I refer only to claim 1 of the '476 patent for ease of reference.

. For the same reason, I do not agree with the majority's conclusion that certain passages in the specification use "launch” to describe “what is displayed to the user when they select various menu options.” Maj. Op. at 1366 (citing '020 patent col. 2 1. 59-col. 3 1. 2).

. While the majority additionally supports its argument by referring to the single use of the term "running” in the specification, see Maj. Op. at 1366 (quoting '020 patent col. 2 11. 40-44 (“[Tjhere is a-computer program which when running on a computing device .... ”)), I note that neither party made arguments with respect to this language, and it is not clear to me from the record that "running” when referring to the computer program itself equates to use of the term as applied to applications within the device.

. Both the majority and the District Court interpret LG’s arguments as prosecution disclaimer arguments and determine that LG does not meet the high bar to prove that Core Wireless "clearly disavowed claim scope during prosecution.” Core Wireless, 2016 WL 4440255, at *4; see Maj. Op. at 1367-68.

. I would not read lines in the specification stating that "App Snapshots are not intended to replace notifications, but to complement them by providing non-intrusive reminders for the user” to support "launch” meaning “display,” as the majority contends. See Maj. Op. at 1366; '476 patent col. 4 11. 43-46; '020 patent col. 4 11. 32-35. Such language could just as easily be understood to refer to a summary application menu's presentation of information from applications that are not currently running.