*983 Opinion for the court filed by Circuit Judge DYK, in which Circuit Judge RADER joins. Dissenting opinion filed by Chief District Judge WALKER.
DYK, Circuit Judge.
Plaintiff-Appellant Medegen MMS, Inc. (“Medegen”), appeals from a final order of the district court granting judgment of noninfringement to Defendant-Appellee ICU Medical, Inc. (“ICU”), with respect to claims 27-28, 31, 39, 41, 42, 47, 53-55, 59, 62, and 63 of U.S. Patent No. 5,730,418 (“the '418 patent”). See Medegen MMS, Inc. v. ICU Medical, Inc., No. 06-619 (C.D.Cal. Sept. 14, 2007). Because the district court erred in its construction of the claim term “plug,” we vacate and remand.
BACKGROUND
Medegen owns the '418 patent, entitled “Minimum Fluid Displacement Medical Connector.” The patented invention is directed to a needle-free valve for intravenous (I.V.) therapy used to administer fluids to a medical patient. In particular, the patented device connects a syringe to a catheter, for adding or removing fluids from a patient’s circulatory system.
A common problem associated with such connectors in the prior art is a phenomenon known as retrograde flow. Retrograde flow is the reverse flow of fluid out of the patient’s body and back into the catheter tubing, the connector, and the syringe, caused by the negative pressure suction that occurs as the syringe is withdrawn from the connector. Retrograde flow is undesirable because the backflow of fluid often contains blood, which causes clotting, and can impede fluid flow through the catheter. Blocked catheter tubing requires either flushing of the tube or complete replacement of the catheter.
The patented invention significantly reduces unwanted retrograde flow by compensating for the negative pressure introduced into the connector by the removal of the syringe with a positive pressure introduced by a plug. That is, as the syringe is removed from the connector, a portion of the plug slides into a valve internal chamber of the connector, thereby reducing the volume of the valve internal chamber, which in turn eliminates the pressure suction of fluid flow out of the patient’s body.
The patent discloses several embodiments having different types of plugs, which can be characterized as either a sliding-type plug, or a collapsible-type plug. The collapsible-type plug collapses like an accordion as the syringe is inserted into an inlet valve, thereby reducing the volume of the internal chamber. See, e.g., '418 patent Fig.3. The sliding-type plug, exemplified in Figures 1 and 2, includes an elastomeric proximal portion that buckles and rotates when the syringe is inserted into the inlet valve, and a distal portion that slides in and out of an air chamber, which is located at the far end of the connector. The buckling and rotation of the proximal portion of the plug creates an opening for fluid flow between an inlet valve and the valve internal chamber. The axial movement of the distal portion creates the change in volume in the internal chamber, thereby achieving a reduction of the unwanted retrograde flow.
In May 2001, Medegen brought this action against ICU, alleging infringement of the '418 patent by ICU’s CLC2000 Connector. In response, ICU asserted several affirmative defenses, including invalidity of the '418 patent. Because ICU’s invalidity defense relied on several prior art references that were not considered by the Patent Office, Medegen filed a petition seeking reexamination of the '418 patent. The Patent Office granted the petition, and *984 Medegen voluntarily dismissed its claims against ICU pending the outcome of the reexamination proceeding. On April 11, 2006, the Patent Office issued a Reexamination Certificate for the '418 patent, allowing claim 28 as originally drafted, ' claims 1-3, 5, 6, 16-27, and 31-32 as amended, and new claims 33-77. Mede-gen re-filed its infringement action against ICU, asserting infringement of thirteen claims of the '418 patent, including: claims 27-28, 31, 39, 41, 42, 47, 53-55, 59, 62, and 63.
Of the asserted claims, several include a “plug” limitation, several include a “biased-member” limitation, and several include a “displacing means” limitation. Claim 27 is representative of the asserted “plug” claims:
A self-flushing connector, comprising:
a valve internal chamber;
a valve inlet port adapted for receiving an actuator, the actuator having a lumen for introducing fluid through the valve inlet port and into the valve internal chamber;
a valve outlet port adapted for outputting fluid from the valve internal chamber, the valve outlet port being in fluid communication with the valve internal chamber at all times and being adapted for allowing fluid to freely flow into and out of the valve internal chamber through the valve outlet port at all times;
an air chamber; and
a plug adapted for being moved into a portion of the air chamber when the actuator is moved into the valve internal chamber and for being moved out of a portion of the air chamber when the actuator is removed from the valve internal chamber, movement of the actuator into the valve internal chamber resulting in a relatively small movement of fluid through the valve outlet port and into the valve internal chamber, and movement of the actuator out of the valve internal chamber resulting in a relatively small movement of fluid through the valve outlet port and out of the valve internal chamber.
'418 patent col.4 1.52-eol.5 1.8 (emphasis added). Asserted claims 31 and 47 have a “biased member” limitation, which the parties agree is simply a “plug” subjected to a biasing force.
Claim 28 is representative of the asserted “displacing means” claims:
A self-flushing connector, comprising:
a valve inlet port adapted for receiving an actuator in an inward direction into the valve inlet port, the actuator having a lumen for introducing fluid through the valve inlet port in the inward direction;
a valve outlet port adapted for transferring fluid in one of a first direction out of the self-flushing connector and a second direction into the self-flushing connector; and
displacing means adapted for providing displacements of fluid within the self-flushing connector, the displacing means effecting a relatively small movement of fluid through the valve outlet port in the second direction in response to movement of the actuator in the inward direction, and the displacing means effecting a relatively small movement of fluid through the valve outlet port in the first direction in response to movement of the actuator in an outward direction opposite to the inward direction.
'418 patent col. 12, 11.8-26 (emphasis added).
After a Markman hearing, the district . court issued a claim construction order, construing several of the disputed claim terms, including “plug,” biased member, *985 and “displacing means.” Based on its reading of the specification and the prosecution history, the district court construed the term “plug” as “an elastomeric part that either pivots about a reduced diameter portion or buckles, to establish a fluid flow path.” J.A. at 19. The court construed “biased member” as “a biased plug, or a plug subject to a biasing force, such as a spring.” Id. at 19-20. And, as modified by its summary judgment order, the court found that the function performed by the displacing means was “to provide displacements of fluid within the connector,” J.A. at 11, 42-43, and that the corresponding structure included “the whole ‘plug,’ the ‘air chamber’ and the ‘valve internal chamber.’ ” J.A. at 47.
Following the court’s claim construction order, ICU filed a motion for summary judgment of noninfringement of its CLC2000 Connector, which contains a rigid plug. Medegen, conceding that it could not establish infringement based on the district court’s construction of “plug” and “biased member,” agreed to a stipulated judgment of noninfringement for the “plug” claims and the “biased member” claims. The district court granted ICU’s motion for summary judgment of nonin-fringement of the “displacing means” claims based on its conclusion that ICU’s CLC2000 did not include a “displacing means.” The district court held that the CLC2000 did not literally infringe the “displacing means” claims because the poppet found in the accused product was rigid, not elastomeric. It also found that the poppet was not a structural equivalent of the corresponding structure of the “displacing means.” The district court entered a judgment of noninfringement as to all of the asserted claims based on Medegen’s concessions and the court’s summary judgment decision. Medegen timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).[1]
DISCUSSION
The primary issue on appeal is the construction of the term “plug.” The parties agree that the term “plug” does not have a well-accepted meaning in the art of medical connectors for intravenous fluid flow. Claim construction is a question of law which we review de novo. Sinorgchem Co., Shandong v. Int’l Trade Comm’n, 511 F.3d 1132, 1136 (Fed.Cir.2007); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc).
The district court construed “plug” as “an elastomeric part that either pivots about a reduced diameter portion or buckles, to establish a fluid flow path.” J.A. at 19. In doing so, the district court relied heavily on the finding that “the preferred embodiment[s] of the invention, as discussed throughout the specification and claims, all consistently discuss a plug” with the elastomeric feature, and that the specification “nowhere describes a non-elastom-eric or rigid plug.” Id. at 14. The district court also stated that Medegen “needed to indicate in the '418 Patent that a skilled *986 artisan could use alternative plugs and describe how such plugs would perform the functions of controlling fluid flow and achieving minimum fluid displacement in the context of its invention.” Id. at 19.
Medegen argues that the district court improperly limited the scope of the claims to the preferred embodiments, and that, instead, “plug” should be given its ordinary meaning: either the district court did not need to construe it at all or should construe it to mean “a moveable member between an open and closed position.” Id. at 13.
It is, of course, “a ‘bedrock principle’ of patent law that ‘the claims of a patent define the invention to which the patentee is entitled the right to exclude.’ ” Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed.Cir.2005) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed.Cir.2004)). Here, the term “plug” is claimed broadly. The term “plug” is not expressly limited by the language of the claims — that is, the elastomeric limitation is not found within the claim itself. Also, there is no contention that the ordinary meaning of the term “plug” does not include a rigid plug or that it has a special meaning in the medical field that requires elastomerieity, or that there was any clear disclaimer of non-elastomeric plugs in the specification.
Nonetheless, ICU contends that the specification is “the single best guide to the meaning of a disputed term,” Phillips, 415 F.3d at 1315, and that one of ordinary skill in the art would read the specification as limited to elastomeric plugs, and that the district court correctly construed “plug” based on that limited disclosure. We disagree. The patent here makes clear that the elastomeric feature of the plug is merely an example of how to create a fluid flow connection between the inlet valve and the internal fluid chamber. The use of an elastomeric plug to establish that fluid flow connection is not central to the invention itself, which is directed to reducing retrograde flow. Indeed, the summary of the invention describes the plug entirely in general terms:
The minimum fluid displacement self-flushing connector further includes an air chamber and a plug adapted for being moved into a portion of the air chamber when the actuator is moved into the valve internal chamber. Movement of the plug into the air chamber results in a minimum displacement of fluid through the valve outlet port when the actuator is moved into the valve internal chamber.
The plug has a generally cylindrical shape which is also generally centered about the inlet port axis, and the plug is adapted for being moved from an inlet port closed position to an inlet port open position.
'418 patent col.3 1.61-col.41.10. Nothing in this general description suggests that the plug must be elastomeric.
ICU instead relies on the Detailed Description, noting that “the '418 patent refers to the ‘elastomeric’ or ‘rubber’ quality of this plug twenty-one times in the detailed description.” Appellee’s Br. at 14 (citing examples). These examples, however, are each directed to preferred embodiments. For example, the specification provides that “[w]hen the actuator 90 is removed from the valve inlet port 21, the spring 74 biases the elastomeric valve plug If back through the valve throat 23 and into the valve inlet 21.” '418 patent col.6 11.25-28 (emphasis added). Several paragraphs later, the specification refers to a “first alternative embodiment of the present invention,” '418 patent col.7 1.13, making clear that the prior discussion referred to a separate preferred embodiment. *987 Clearly, those portions of the specification are not referring to the invention as a whole, but rather to one aspect of a preferred embodiment. This is not a situation where “the specification [reveals] a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.” Phillips, 415 F.3d at 1316; see also Sinorgchem, 511 F.3d at 1136.
ICU essentially relies on a single embodiment theory — that is, that the construction should “reflect[ ] the single, preferred embodiment,” which in this case, includes the elastomeric feature of the plug. Appellee’s Br. at 12. But the single embodiment argument was specifically rejected by Phillips. There, we stated:
[Ajlthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. That is not just because section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine them definitions of terms to the exact representations depicted in the embodiments.
Phillips, 415 F.3d at 1323 (emphasis added, internal citations omitted). Indeed, in Phillips, we went on to reject a restrictive construction of the disputed claim term in light of the specification, and the effort to import limitations not found in the claims. Id. at 1328.
ICU also asserts that Medegen disavowed rigid plugs in the prosecution history. It points to a statement made during reexamination that “the plug proximal portion is pivotable about the reduced diameter portion.... This feature is shown in all the illustrated embodiments.” J.A. at 3088. But, as Medegen points out, this statement was made only to provide support for a dependent claim (claim 35) that particularly recited that pivotable feature of the plug: “the biased member proximal portion comprising a reduced diameter portion, the biased member proximal portion being pivotable about the reduced diameter portion.” J.A. at 114. It was not a statement made to distinguish the invention over the prior art or to limit the scope of claims that did not include such a limitation. The other statement that ICU relies on distinguished the collapsible-type plugs from the sliding-type plugs. Medegen stated in a reply to an office action that “a plug portion can be both non-eollapsible and bendable at the same time.” J.A. at 3085. We find this statement unremarkable, as it is simply a description of one of the preferred embodiments (i.e. the embodiment of Figures 1-2). In short, nothing in the prosecution history supports ICU’s claim that Medegen disavowed rigid plugs.
Under these circumstances, it is clear that the construction of “plug” need not be limited to the preferred embodiments. “Plug” should instead be given its ordinary meaning: “a member moveable between an open and closed position.” The district construed “biased member” to mean “a biased plug, or a plug subject to a biasing force, such as a spring.” Id. at 19-20. That construction must now be read to incorporate the correct definition of plug.
Medegen also argues that the district court erred in construing “displacing means” in claims 28 and 42. The term “displacing means,” recited in claims 28 and 42, is a means-plus-function claim *988 term under 35 U.S.C. § 112, ¶ 6.[2] The parties agreed below that the function of the “displacing means” is “to provide displacements of fluid within the self-flushing connector.” J.A. at 10. In connection with its order granting summary judgment, the district court found that the corresponding structure of the term “displacing means” includes “the whole ‘plug,’ the ‘air chamber’ and the ‘valve internal chamber.’ ” J.A. at 47. On appeal, the parties now agree that a plug is included in the structure that performs the described displacement function. Apart from this agreement, the parties appear to agree on little else with respect to the issue of corresponding structure.
ICU contends that the plug alone is the corresponding structure, while Medegen concludes that the corresponding structure includes the plug, an air chamber, and a valve internal chamber. It is unclear whether this broader interpretation makes any difference for present purposes. ICU appears to contend that, because a rigid structure is not within the district court’s construction of the claim term “plug,” a rigid plug is not corresponding structure for § 112, ¶ 6 purposes, and that accordingly, the accused device does not infringe claims 28 and 42 because it uses a rigid plug. We have rejected the district court’s claim construction of the term “plug” as limited to elastomeric plugs. However, the question remains whether, for purposes of the means-plus-function claims, the corresponding structure is limited to the elastomeric plug described in the preferred embodiments, or whether the structure also encompasses plugs generally, including rigid plugs (which we have found are included within the scope of the “plug” claims), as described in broad terms in the summary of the invention.
Relying on a number of our decisions, see, e.g., Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 909 (Fed.Cir.2005), Medegen argues that the corresponding structure of the “displacing means” is not limited to the elastomeric plug depicted in the figures. ICU, relying on Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 951-53 (Fed.Cir.2007), asserts that the district court properly focused on the correct corresponding structure, and that Medegen’s reliance on the summary of the invention is misplaced.
In view of the limited and somewhat confusing briefing on this issue, we think that the best course is to leave this issue open on the remand so that the district court can arrive at a proper construction of the corresponding structure in claims 28 and 42, in light of our determination that the term “plug” in claim 27 (and its dependent claims) is not limited to elastomeric plugs. We note that, given our construction of the term “plug” in claim 27 (and its dependent claims), the construction of claims 28 and 42 may prove to be unimportant in the overall determination of infringement.
CONCLUSION
For the foregoing reasons, we VACATE and REMAND.

VACATED AND REMANDED.

No costs.

. This case was made significantly more difficult by both parties' inaccurate assertions in their briefs on appeal that, "Medegen withdrew [the plug] claims without prejudice to its rights to reinstate them in the event the court's claim construction order was reversed on appeal.” Appellant's Br. at 4-5; see also Appellee's Br. at 2 n. 2 ("Medegen dismissed those claims before judgment of non-infringement was entered.”). At oral argument, both parties admitted that these descriptions were inaccurate. Instead, Medegen stipulated to noninfringement of the "plug” claims based on the district court’s construction of that term. The district court entered an adverse judgment against Medegen on those claims.
We note that counsel are responsible for ensuring that the briefs contain accurate information. That responsibility was not fulfilled in this case.

. 35 U.S.C. § 112, ¶ 6 provides:
An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.
(emphasis added).